Justice. Thank you, Your Honor. May it please the Court. Julia Martinez on behalf of the United States. I'm joined at counsel table by my colleagues Stephen Campbell and Tobias Kobra. Your Honors, the question before the Court today is whether the Supreme Court case, Supreme Court's holding in Miller v. Alabama, a case which concerns sentencing considerations for juvenile defendant as an adult with a serious offense like murder in aid of racketeering because the statute in question, the murder in aid of racketeering statute, provides for a mandatory life sentence. The government respectfully submits that the clear answer is that it does not. On a mandatory death penalty. Or a death penalty sentence, Your Honor, yes. That is what the text of the statute, 1959A1, provides with respect to murder in aid of racketeering. The government respectfully submits that the district court's opinion in this case went well beyond what the Supreme Court required in Miller or in any of the other cases. And also clearly defies plain congressional intent in enacting both the RICO and the Federal Juvenile Delinquency Act. The facts of this case are simple. Although they are. Can I just, so if it doesn't prohibit charging a juvenile under this statute, how is the judge supposed to sentence? Your Honor, the question of sentencing should be raised at sentencing, which is what we argued before the district court. But it's necessarily before the court today, of course, because of the district court's opinion. And the government submits that what the court should do, this court and the district court, is to read the statute to allow a life sentence, if he found it appropriate, based on the factors that the Supreme Court has required in Miller v. Allen. But is the judge supposed to pick a sentence out of the air? Isn't that a separation of powers kind of a problem? Your Honor, I don't believe at all that the judge picks a sentence out of the air. It's a two-step process. First, what is the judge, what is the court permitted to sentence? And second, what should the court sentence? With respect to what should the court sentence, yes, the court is picking a sentence that's applicable to that but there's a statute, usually, that gives you a direction. In this case, if I'm remembering the district court's opinion correctly, which doesn't always happen, I thought the court primarily based this decision on due process grounds. So, in this case, if we look at it using the legal commission of the crime, an individual looking at this statute to be charged under the RICO murder provision would have seen a statute that basically said, for murder, for a fine under this title, because under Miller v. Alabama, death and life imprisonment were, as mandatory terms, off the table. So, what notice would there be as to the penalty for this crime at the time of commission? Your Honor, I respectfully submit that the notice is clear within the four corners of the statute. The statute does provide that someone who commits that violation may be sentenced to life, may be sentenced to death. I don't think that's possible, though. The acts in this case occurred after Miller v. Alabama. Yes, Your Honor, but Miller v. Alabama does hold that a juvenile defendant may be sentenced to a life sentence. The Supreme Court was very clear in Miller v. Alabama. That's true, but the statute doesn't say that. Well, what the statute says is that the maximum penalties are of life and the death penalty. Now, it does not provide that. That's also the only penalties provided under the statute, aren't they? Absolutely, Your Honor, but that brings us to a severance argument. That brings us to the Supreme Court precedent in Booker and Bryant's one part of a statute to be unconstitutional. The court then must move on to the question of whether the entire statute is rendered unconstitutional or if, in fact, there is actually a remedy that can be implemented. What I'm looking for is a case where there is a severability argument made based on a change in the statute before the act of commission of the crime. I mean, we see this a lot when there's retroactivity that's provided for and then at the time the crime was committed and at the time of the sentencing, there was a valid statute and the courts adjudicated the case based on the statute at that time, but not a case, unless you can provide us with one, but not a case where the statute's been excised before the crime was committed. Can you give us a case where severability's been applied in that circumstance? Your Honor, I agree that it's a unique circumstance. I'm not sure I can cite a case that has those exact facts, but I'm also not sure I agree with Your Honor's comment on that. Well, that's kind of the gist of this case. It's a case of a crime, but without notice, a fundamental precept of due process as to what the penalty would be. And your response, as I understand it, is, well, the court gets to come along in the absence of action by Congress and make it up. I disagree with that, Your Honor. Respectfully, the question of notice is notice of the maximum offense. The due process does not require a defendant to be notified of all possible iterations of a sentence. To the extent that the defendant receives a sentence less than the maximum possible sentence that he faces, that's a benefit. It's not an abrogation of constitutional rights. In this case, the statute provides for- But when you look at the statutes, you only got three options to be included in the fine. Death and life imprisonment. They're gone. All you got left is the fine. I disagree, Your Honor. Death is certainly gone. Death has been gone for quite some time under Supreme Court precedent. But life is not gone. Miller v. Alabama makes it quite clear. Well, but it's gone as a mandatory. It is, Your Honor. But then the question is, does the defendant have notice under the due process argument? The question is, does the defendant have notice of the maximum possible sentence? Not every possible sentence. Not what discretion the judge may or may not have, but the possibility of parole. And therefore, instill discretion within the district court to perhaps provide for less than a life sentence. But on the notice question, there's no doubt that the defendant had notice that when he commits a violent murder in aid of racketeering, premeditated brutal murder to aid a racketeering enterprise, MS-13, that he may face life in prison. Now, if he gets- Even if you can read the statute that way, obviously we're all here arguing about it. We had a district court judge rule that one couldn't tell. How is a potential defendant to interpret this, given that the great legal minds that exist can't quite agree on exactly what it says? Well, what the district court couldn't agree on, or was having difficulty interpreting, is whether he had the ability to give this defendant, if he found it appropriate, less than a life sentence. So I'm concerned. The district court looked at the statute and said, life is clearly possible. But the Supreme Court says I have to be able to give less than life. So I'm concerned because the Fourth Circuit, neither the Fourth Circuit nor the Supreme Court has told me that I may give less than life. And so I don't think- Well, how could he give less? I mean, I guess I still come back to, say the district court goes through all the hoops, asks all the Miller questions, decides that life is off the table. He's got no guidance at all about what kind of a sentence he's going to lose. Well, he can- Except for the fine, because he can give the fine. To answer your question in two parts, can he and how does he go about it? He can because the Supreme Court has told him not only that he can, but that he must. The Supreme Court held in Miller, and to be clear, Miller is a similar set of facts, right? It's a murder case, it's a juvenile defendant, and it's a mandatory life sentence under the applicable state statute. And what the Supreme Court said- State courts are different, right? Because there's no separation of powers problem with having a state court just make up a sentence out of error. But in the federal system, right, isn't that a problem? I disagree with your Honor's characterization that the court would be required to make up the sentence. In typical cases, a court looks at the range within a statute and also a range as provided under constitutional provisions, guidance from this court and the Supreme Court, looks at the 3553A factors, and looks at any other guidance that's been given in case law. In this case, the guidance is in Miller. Miller actually goes through a number of factors that a sentencing court must look at when sentencing a juvenile defendant. They're actually quite similar to the 3553A factors. But the important point of Miller is that the district court must have discretion to consider the mitigating qualities of youth. And those are all great arguments to present to the judiciary committees in the House and the Senate to amend this particular statute, which in the intervening years they have not done. But I think it's a concern we all share here. Obviously, it's a very serious crime, and certainly the Congress is going to want to have some provision for it. But when we're conducting a severability analysis, which I understand is where you want us to go via Booker, the threshold of that is to determine, you know, what was the congressional intent? If this was going to happen, what would be the congressional intent? And how do we know what the congressional intent is going to be here? Well, Your Honor, I think that the court- They may decide that juveniles in the wake of Miller and other cases get some other special treatment that wouldn't be accorded to adults. But, Your Honor, I think the court can look to congressional intent by looking both at the Juvenile Delinquency Act, the Federal Juvenile Delinquency Act. The Congress has made clear that it does expect some juvenile offenders to be charged and tried as adults in the federal system. There's two ways that that can go about happening. One is, which is what happened here, where there's a motion from the government, and it's within the discretion of the district court to weigh the statutory factors and potentially grant the transfer motion to allow charging. The other way, which this defendant, frankly, almost qualifies for, is a mandatory transfer. A defendant over the age of 16 years or older who commits a violent offense, like murder in aid of racketeering, and has a requisite criminal history. And again, this defendant does not. We're not in a mandatory transfer world. But Congress has made very clear that there are certain types of juvenile defendants who commit certain types of offenses that must be transferred for adult prosecution. So to go with the district court's holding that they can't would actually court clear. Is there no other statute under which he could have been prosecuted for his crimes as an adult? There's nothing that would have fit the crime that doesn't have a mandatory life sentence? There is no other federal statute that fits the actual crime. There's the other violent crimes in aid of racketeering. None of them include murder. And this was actually a brutal, premeditated murder. There's, of course, the federal murder statute. Aren't there any sort of lesser-included offenses you could have charged? I mean, there's literally no other federal statute that could have been used in this case. In the VICAR statute, there is no lesser-included offense. For example, there's no way to charge VICAR murder as second-degree murder without a mandatory minimum. Under the federal murder statute, there actually is first-degree and second-degree. Now, this is very clearly on the facts first-degree. Well, I understand you say there's a better charge and a worse charge from your perspective, but is there a worse alternative here? In this particular case, there is not. There's no federal murder possible charge here because it was not committed on federal land. This was a crime that was committed on state parks. So we get to federal court quite precisely because it was done in aid of racketeering. So there actually is no federal statute that precisely fits the conduct that is alleged in this case. So the evidence of congressional intent you referenced, you mentioned the Juvenile Delinquency Act's general proposition that some crimes and actions by defendants and some defendants are serious enough that they should be treated as adults. Is there any – there was another piece you said that you thought might provide evidence of congressional intent on what should happen? Yes. So there's the fact that there was mandatory transfer, and Carlys has said that some must be transferred. There's also the RICO statute. This court has looked at the RICO statute and the VICAR statute in a number of different contexts. And it's clear that with respect to RICO, as this court held, I believe, in U.S. v. Juvenile Mail, that the congressional intent with respect to passing the RICO statute was to help halt the infiltration of organized crime into the American economy. MS-13 is a clear example of what Congress was trying to reach. MS-13 is a rapidly expanding, violent international street gang that has significant presence here in Northern Virginia. And they are known to use juveniles to recruit teenagers, to recruit young teens in high schools. Can I say – can I – I feel like I totally understand what I take to be your point, which is we have a sense that Congress generally wanted to prosecute perhaps juveniles like this prosecutor for very serious crimes under federal law. I totally understand that. But I'm still with the defendant like this, besides that they are not eligible for life imprisonment under Miller. What do we know about how Congress would have wanted that person sentenced? That's the kind of congressional intent I'm looking for. And I look at this statute and all I can figure out is, well, they clearly wanted that person to get more than you would get for kidnapping. And they wanted there to be some kind of a mandatory minimum. But how do we know what Congress intended in terms of a sentence beyond that? Well, Your Honor, I think the best that the court can do is – the alternative to reading the statute as the government has suggested would be to read it to require some other sentence or to do what the district court did and what the defendant urges, which is to read it to prohibit prosecution. And the core of the government's argument is that there's just simply no question that given the choice between prohibiting the Federal Juvenile Delinquency Act, that all of that makes it clear that Congress would prefer the alternative of allowing federal adult prosecution of a juvenile like this and the potential of receiving less than a life sentence. Suppose we agree with you on that. Judge Harris mentioned the kidnapping portion of it. And I think your argument in the briefs was that, well, as Judge Harris indicated, Congress clearly wanted something worse, a higher sentence than kidnapping. Kidnapping can go up to life. There's some logic to the idea that that would give you an understanding of what at least for a murder without a mandatory minimum sentence could be. But is there any examples you can point to in cases or otherwise where one has gone through those types of hoops to look at one portion, the offense, the sentence for one crime, and then determine that based on that, a more serious crime must have merited a higher sentence? May I respond to the question? Your Honor, I think that the easiest cases to look at are the cases that have actually faced this exact question that's before the court, at least with respect to the sentencing. So for example, in the Maldonado case in SDNY and then the second reviewed by the Second Circuit, in both of those cases, the district court, the sentencing judge, was looking at an offense that required a mandatory life sentence and looked at Miller in the Supreme Court's guidance and said, I can give less than a life sentence. I have to consider all of the mitigating qualities of you. And the district court, without further guidance from Congress, because as Your Honor has pointed out, Congress has not acted since Miller, the court found that it did have discretion to impose a different sentence. But these are cases where at the time of the commission of the crime, the statute both as to the act of crime and to the sentence were valid. This goes back to an earlier question. This is a completely different case because the statute as to the sentence for the crime, with the exception of the fine, is excised. We're in a completely different setting. And this is, you know, if we had, if the Supreme Court said Miller's retroactive and so Mr. Underseal had been convicted and the statute was valid and the I think on point for that consideration. But this is a very different circumstance that we have here. And that's why, at least for me, it's much harder to place those cases that you're citing like Maldonado on the same level of precedent. I completely understand, Your Honor. I intended to cite those cases once we got to the point of how to fashion a sentence. Those courts are good examples of how courts have gone beyond that. Can I push you even on that point? Because I think Maldonado also doesn't address my concern, which is what's a district court judge supposed to do? Pick a sentence out of there? Because in Maldonado, at least, didn't the judge find that even under Miller, he could be sentenced to life in prison? So he wasn't sentencing outside the statute, below a statutory minimum. He was sentencing in accord with the statute. That's not my concern. My concern is what if the Miller inquiry comes out the other way? Then he's sentencing under the mandatory minimum. How can you do that? We just had a whole argument about how hard it is to do that. Well, Your Honor, there's actually several cases cited in the brief that address exactly that point. Not Maldonado? Yes, Your Honor. And those were all the cases that were on collateral review. So those are cases, and again, to be clear, those are cases with a different procedural history. And so it's true that these were cases that occurred before Miller. So the crime, the conviction, and the original sentence are all pre-Miller. However, to address Judge Harris's concern about how the district court judge fashions that sentence, several district courts across the country and state courts have faced that precise question on collateral review when a defendant files a motion and says, my mandatory life sentence is unconstitutional. Your Honor, I would like you to re-sentence me to something else. And I can see how in state courts that's not a problem. And it has occurred in federal court as well, Your Honor. And so district courts and state courts have looked at those sentences, and some of them, similar to Maldonado, have decided, nonetheless, the facts warrant a life sentence. But others have actually imposed a variety of terms of your sentences. So there are federal district courts that have said, under Miller, you cannot get a life sentence. I will sentence you under this mandatory minimum. That is the clear implication of the way that the courts have granted these motions. But to be clear, these are not published dispositions, although they're included in the appendix, because we did append them to a filing below. And so they're not lengthy explanations of what the court is doing. But what is clear is that the conviction and the statute that the person was convicted under required a life sentence. A life sentence was imposed as required by statute. And then on collateral review and re-sentencing, the judges imposed sentences, term of your sentences, for that same offense that was less than a life sentence. Are any of those cases in which the crime occurred after Miller? No, Your Honor. As I said when I began the question, these are all collateral review cases. They're all pre-Miller. Pre-Miller. I do want to, well, I see I'm out of time. Perhaps I'll wait for... I just have one last question, because I would want opposing counsel to address this. Assuming the transfer grounds were found, is there any basis to prohibit prosecution of a juvenile under 1959A for any of the subsection 2 through 6 provisions? Let me make sure I understand Your Honor's question. Is there any basis to prohibit? In other words, that the government is not allowed to? In this case, if the transfer grounds were found, could this particular defendant be prosecuted under subsection 2 for maiming or subsection 3 for assault with a dangerous weapon? In other words, could we right now on this record, given that the district court did in fact find that transfers in the interest of justice, could we simply go before the grand jury and present an indictment on, for example, 1959A2? Am I following Your Honor's question? Correct. Your Honor, that's a very interesting question. Certainly at the moment, we would not do that, given that even the district court has no... Right. Is there any prohibition that you can identify for us that would keep, that would bar the government from a prosecution on that basis, under that statute? I think it would be troublesome to do so, given that one of the statutory factors to aid the judge's discretionary analysis is the nature of the offense. And the nature of the offense necessarily includes the statute that the government has alleged is violated in the juvenile information, which is the charging document that begins this entire process. If we were to take the case to the grand jury on a different statute, it might raise the question of whether the court had actually authorized that or not, given that the court looked at a different offense with respect to the charging factors. I'm not sure that I've ever seen... I don't think there's any court case that addresses that. I have seen cases that address whether, at the indictment stage, post-transfer, the government can indict on multiple offenses, including the one that it originally advocated for, and that has been permitted. But again, the government did present the offense that the court found was sufficient to grant transfer to the grand jury. Thank you very much. You've got some time left on the rebuttal. Thank you, Your Honor. Ms. McDonald? May it please the court, Keevan McDonald on behalf of the appellee. I'm here with my co-counsel, Frank Salvato. So is there any bar to your client being prosecuted under these other subsections of the statute? Your Honor, not to my knowledge. It looks as though if the government sought to attempt to transfer him under those sections, and also to prosecute him under those sections, that there would not be a bar, at least with respect to the notice issue. Okay. So, Your Honor, following the Supreme Court's decision in Miller, the prosecutors did not just go back to the state courts and attempt to prosecute all of the juveniles under the exact same sentencing structures, sentencing schemes that were ruled unconstitutional, in the hope that the government could prevail on an argument because the courts would then sculpt new law. That is essentially what the government is asking you to do here. There's been no amendments by Congress. And so they're now asking the court to step in and make those amendments and act where Congress hasn't acted. Is there anything in Miller that helps to do that? I was struck by the language in Miller that said discretionary sentencing in adult court would provide different options, a judge or jury could choose, rather than life without parole, lifetime prison term, with the possibility of parole. It's easy to imagine a judge decided that a minor deserves a much harsher sentence than what he would receive in juvenile court, while still not thinking life without parole appropriate. Doesn't that indicate a clear understanding by the Supreme Court that in the straight and down mandatory life sentences, that the court considered what remained to be a discretionary life sentence? Is there any way to read Miller as effectively answering this question? I think Miller is actually providing guidance to the legislatures and then coming to the conclusion as to what would happen as a result of the legislatures changing the statutes. Miller did not, the justices in Miller did not step in and say, therefore, Alabama, your penalty shall be. They didn't say it explicitly, but in terms of the understanding of the legal community out there as to what the next best thing, so to speak, was. And it seems to have been borne out by how the cases have been handled in terms of resentencings and so forth. Well, what Miller did was stepped in to determine what was constitutional and what was unconstitutional, which is the role of the judiciary. Miller stepped in and the court said, well, it's unconstitutional to sentence a juvenile to mandatory life without parole. But it's not unconstitutional to sentence them to life without parole after, clearly, they go through the procedure and there's an actual sentencing and mitigation presented on behalf of the defendant. So I think that that is what Miller actually does. It just outlines what's constitutional and what's unconstitutional. It does not say, therefore, this shall be the penalty of the state. And I wanted to step back and say, following Miller, at the time, prior to Miller, there were 26 states that had mandatory life without parole statutes in place, statutory schemes, I would say, in place for juveniles. After Miller, and I believe at least 16 as of March 2015, 16 of those states had amended their statutes to comply with Miller. Six of those, well, actually five of those states had completely banned life without parole for juveniles. And I think that that is very important because the government wants you to presume and predict what Congress will do here. It's very possible that Congress could completely change the statute, like these five states did, and ban life without parole for juveniles altogether. But isn't that not exactly the right analysis? Because Booker tells us we look, until that happens, we can look and see what Congress's intent would have been in light of this decision. Yes. And we know what they originally thought the sentence should be, which was a mandatory life sentence, when they enacted the statute originally. Your Honor, I'll have to – Do we really look at what happens in the future? Your Honor, I do believe that's what Booker said, but I don't believe that that's what Miller said. Miller actually turns to the statutes and says, well, when there are two independent statutory schemes at work here, it's impossible to determine what the legislative intent is with respect to juveniles when it comes to penalizing them for adult crimes. It was originally stated, I believe, in Roper, and then they went back in Miller and said that you can't even infer legislative intent or determine it based on the operation of two independent statutes because the legislature never actually said, well, with respect to RICO murder, juveniles shall receive this. It's only through the operation of these two independent statutes that you're even able to arrive at that penalty. And Miller does say that then state courts need to go back and address these statutes with respect to juveniles, maybe even carve out a separate independent statute with respect to juveniles and murder in their states or in the legislatures altogether. So I think that that was a fundamental problem with the government's argument as far as legislative intent is concerned because Miller actually does address that you can't, it's impossible to determine legislative intent in that context. And another point that I wanted to raise. Just so I understand it, are you saying, I mean, when this legislative intent analysis, are we looking at what would Congress have done at the time they enacted the original statute if they had known that this, what they actually did enact was unconstitutional, or do we look at what they would do now that Miller has happened? And under which analysis and what's your authority for which? I think it's actually under both analysis. Miller actually, when they look at it, they look at clearly prior to the decision and they look at what the state legislatures would have intended and they say, well, there are all of these crimes that apply to adult defendants. And then when you try to include juveniles, basically all you do is do the transfer statute. You look at the transfer factors, but you actually don't look at what they, the legislature never actually looks at what they intended for the individual, the penalties for each individual statute as they apply to juveniles. But they knew what they were doing when they did it. They knew all these statutes were out there. They certainly understood what mandatory life sentences and death were. What was going to happen if juveniles got transferred? They didn't prevent juveniles from being transferred for those types of cases. They didn't prevent it. So I'm not disagreeing with you as to what they might do now being a little bit unclear, but as of the time of the original statute, if they knew full well that juveniles were going to be in this situation and yet they said mandatory life, how can you argue for any other intent other than discretionary life or whatever the next highest thing that's constitutional? Well, I think what Miller was saying is that you can never, that you can't assume that they actually sat down and the language was careful, deliberate consideration of these penalties as they apply to juveniles when they enact the transfer statute. And I think that that also, again, can be borne out by the fact that these five states, which had the same analysis, they thought mandatory life without prison, apparently it was appropriate for juveniles if you want to follow the analysis that you just raised, then went back and banned it altogether following Miller. If that wasn't their original intent or if mandatory life or life imprisonment was their original intent, then why did they go back following Miller and then change it? It's like, it's as though they carefully considered it following Miller as opposed to what they did pre-Miller. But given our notice issues, don't we need to look at what the statute would have looked like at the time that it was enacted? Because, I mean, Booker, isn't that what they did? They went back and looked at what was on the books prior. They didn't look to see, well, what would Congress do now that we've spoken? If they have another crack at it now. Yes, but I think Booker, again, is an entirely different analysis. It's not the operation of two independent statutes. And then even then, I mean, if you're following the government's excision argument, they're still wanting the courts to function as a legislative body. Because if you take excision to its natural conclusion, as the court did in Booker, when you excise the unconstitutional portion, then you arrive at only a fine. And you cannot go beyond that without the court functioning as a legislative body. What about the government's argument that you excise the whole part? I mean, you basically fold the kidnapping penalty underneath it on the theory that it was clear that that was at least a floor for what Congress would have intended. Their argument is you take everything out of that subsection one after murder. And luckily for them, it's consecutive words. So it is removing words. It's two different parts. As I indicated, I'm not sure I've seen that before, but they are just taking out certain words and they end up with language to the effect of murder Murder and kidnapping, term of imprisonment up to life. I think if you look at the plain language of the statute and the way it's separated there, if you were, I mean, he was clearly, our client was clearly charged under subsection A1. And under that, it is for murder. Or kidnapping. Or kidnapping. So did the indictment break that out? I guess there hasn't been an indictment under the federal indictment. There hasn't been an indictment. There was the original information that was charged. And under that subsection, he is charged with murder. And the penalty for murder is listed as death or life imprisonment or a fine or both. And then the way the language is separated, I think with the semicolon, when they say to excise it, it would be just excising that portion for that subsection 1. I don't think that you can read it the entire way. So I disagree with how they read the statute. It would also be right entirely. I'm sorry. Another point that I wanted to raise is with respect to notice.  It's clear that courts have held, the Supreme Court held in Cheeks, the Fourth Circuit has held, that the defendant is presumed to know the law. At the time of the offense, the law, both mandatory life in prison and the death penalty were unconstitutional. It's a legal fiction we must indulge. Well, Your Honor, it is the law that he is presumed to know the law. And so he then, therefore, is not on notice of anything except that his penalty is a fine if he is convicted for this alleged offense. So I think that there the government's notice argument fails. Another issue, and again, if it is excised prior to the crime being committed and there is no penalty of incarceration, I think it then turns to Evans, where Evans, in that case, there was a statute written and there was no penalty actually given by Congress. And in that case, the court said that the judiciary's role, it's outside the bounds of the judiciary to legislate, to create a penalty where there is none. And I think that that is exactly what the government is asking the court to do, to function as Congress in this case in the absence of congressional action. And finally, we do raise an ex post facto argument. I think that that's important here. If there was no penalty in place at the time of the offense, at least a penalty... Can you raise an ex post facto argument just for judicial action? I mean, it's not a limitation of... I mean, ex post facto, in my mind, comes under the Constitution because it's a limitation upon the power of Congress. Right. Can you raise that in a judicial action? I think if the judiciary functions as a legislature and starts creating a penalty, then, yes, the ex post facto law would then apply. Clearly, I couldn't find any case law because I could not find any cases in which the courts did create the law, but I think if they do create law that increases the penalty under Pew v. United States, then it would be an ex post facto law. That doesn't seem to open quite the garden. Special niche market in ex post facto litigation. Was Rogers a case where there was an ex post facto-like due process issue and they treated it under the due process clause? Is that relevant to this situation? I'm not sure. Rogers v. Tennessee. I'm not sure, Your Honor. I'm not familiar with that. It seems like on the ex post facto issue, the factors are notice, foreseeability, and fair warning. And I guess it comes down to the question of whether we're bound to focus on, again, the arguable legal fiction that the defendants looked at this and said, it says life, but I know the Supreme Court has said they can't do that, and so it's really unclear. Perhaps in practicality. One step below in legal fiction is they might have actually looked at the statute before they went out and committed the crime. Based on that, they would have assumed life. They would have been wrong for mandatory life. But we don't necessarily look at it that way. The law is definite and knowable is what the courts have said. The Supreme Court opinion on top of the statute. Because the statute would have, as a practical matter, if anyone had looked at it at the time without anything else, would have said, well, I can get a maximum of life or maybe even a mandatory life. So that would be something that they could expect. I guess the question is, after Miller, would someone have looked at the entire rubric and said, I can expect, there's no way I could expect life under that, even given the kidnapping portion and given congressional intent. And, again, I think the case law is clear that the defendant is presumed in all of them. So then it follows that the notice foreseeability, he could not have been placed on notice. But he only needs to know about the possibility of a life sentence, correct? Yes. Not that he will get that or that it will be mandatory or it will be discretionary. If what the government is asking for is the ability to charge a crime that would lead to a sentence up to life, then if there was some notice at the time of this crime that life was a possibility under whatever scenario, that would be sufficient to address the notice issue, wouldn't it? Well, at the time of the offense, life was not a possibility, only a fine. Because the statute read it was a mandatory life or death. And both of those were unconstitutional pursuant to Miller. And, therefore, the only thing that was left was a fine. So up to life was not included in anything that Congress had wrote at the time of the offense. And I wanted to also touch on that this doesn't prohibit prosecution. There are other options available to the government. The court has raised some, but also there's the possibility of state court. And so the government does have other options available to it. And I believe, Your Honor, then we are just simply asking for this court to affirm the order of the district court. I have nothing further. Thank you. Any other questions? One question. I don't know if you're familiar with this case, Hooks v. Sheets, from the Sixth Circuit? No. I'm not sure within the briefs, but I thought it had some relevance to the ex-post-factorship. But I won't ask you about it if you're not familiar with it. No, I'm not. I did want to just state also, with respect to the habeas cases, I know that they were raised. This issue was never even addressed by any of the courts in the habeas cases. So I don't see how they really have any bearing here. The issues are totally different. And also you have to think that these defendants would not have raised this issue at all because as soon as they had the opportunity to come from under a mandatory life sentence, they would have taken it and run anything less than. And this issue would not have been raised in that situation. Thank you, Your Honor. Thank you very much. Ms. Martinez, you have some time left on the rebuttal. Thank you, Your Honor. Your Honor, what I wanted to address first is I think that the issue with the notice argument that we've been discussing today and that the defendant has raised is that what Miller did was tell courts, you have to be able to sentence a juvenile defendant to something less than life. You can sentence a juvenile to life, but you have to be able to consider other options.  That was simply not what the Supreme Court did in Miller, either with respect to the statute at issue or with respect to any other federal statute. So the assumption that the second the Supreme Court published Miller that this statute in question had words excised from it is an erroneous assumption and leads us down the wrong track. What the defendant had notice of, if we go with the legal fiction that he was aware of all relevant law at the time that he committed the offense, was that the statute provides, allows for a defendant to be sentenced to life and that the Supreme Court has said that courts must be allowed to consider less than a life sentence in addition to a life sentence. There's no notice issue there. Under the due process clause, the defendant must know the maximum possible sentence, not every iteration. It kind of depends on how you look at it, because even though Miller may have left open the possibility that a legislature could enact a statute that maxed out the penalty at a non-mandatory life sentence, under the severability analysis we have to look at it looking at the intent of Congress. How do we know, post Miller, with different states doing different things, how do we know with any certainty what Congress would want done? Your Honor, respectfully, that's not the question, as the Supreme Court made clear in Booker. The question is not what does Congress want now, or what will Congress pass if and when Congress gets around to dealing with this issue. The question is what would Congress have intended, would have intended, at the time of passing the statute, had Congress have known of this constitutional problem, which was later decided by the court. Booker, I'm so confused by this point. Booker is a severability case, and I don't understand what severability gets you here. Thanks to severability, you could have charged him, say, subsection A2 is still perfectly fine, and probably just the kidnapping thing is fine, too. That's severability. Is there any case where we've done what you're suggesting, where you kind of sever half of one subsection, and then a couple of words from the next, and then string together one offense with the penalty for another offense? That's not severability. I'm not sure that's exactly the argument the government's advancing. Isn't that what your brief said, that we should take out all the words so that it says for murder by imprisonment for any term of years or for life? What the government argued is that the court should read the statute in the most plain and easiest way possible to permit for juvenile defendants a sentence of any term of years up to life, which is the requirement. Let me just add, because right now, I look at that, and to me, that seems totally inconsistent with the two things we know about Congress's intent, that it should have been a mandatory sentence, not any term of years, and that it should be more than what you get for kidnapping, because that's just sentencing 101, right? You always get more for murder than for kidnapping. So if we run in the kidnapping penalty to murder, all we know is for sure that's not what Congress wanted. Your Honor, I disagree that that's all we know of Congress's intent. What we know of Congress's intent, that Congress intended for murder-inative racketeering to be punished most severely. Now, post-Miller, most severely. But not what we would be doing if we gave it the same penalty as kidnapping. Well, I disagree. We would be giving the courts the opportunity to punish the juvenile defendant most severely. Not most severely. Same as a kidnapper. As severe as the Supreme Court has permitted. Don't we always, correct me if I'm wrong, I thought that there was sort of a, like I said, sentencing 101, that you don't get the same penalty for kidnapping as for murder. That's a huge mistake because of incentives. A district court judge post-Miller, we're looking at one defendant, one MS-13 gang member who committed murder-inative racketeering, and a second who committed kidnapping-inative racketeering in the exercise of his judicial discretion. Looking at guidelines in 3553A, he likely would give the juvenile defendant who committed murder-inative racketeering a greater sentence than the similar situated defendant who committed kidnapping-inative racketeering. Nothing about. If we take it back to the Booker severability, which is I think where Judge Harris was going, under Booker basically the court said, all right, we're just going to take these pieces out. X this out. X this out. Just like we would X out this language right here. But we're not adding anything. To the contrary, Your Honor. Actually what the Supreme Court did in Booker in excising section 3742E was it got rid of all standards of review on appeal. So that section provided for the standards of review on appeal. And the Supreme Court, in Justice Breyer's opinion, addressed the concern raised about whether that's a problem for this excision, this severability analysis the court was undergoing. And what the court said was that that was not a problem. And, in fact, what the court would do is simply read back in standards of review. Quote, we infer appropriate review standards from related statutory language, the structure of the statute, and the sound administration of justice. All right. We would just use standards of review like we use in other cases. But what do we have here that's comparable that allows us to meld the murder with the kidnapping? I don't know that it's melding murder with kidnapping. It's simply allowing. Well, it has to be. The way you want us to read it is murder and kidnapping up to life is a possible sentence. That becomes one statute at that point, inseparable. Well, Your Honor, Congress chose to put both murder and kidnapping both under 1959A1 as opposed to under a 1959A2 or 3 or 4. So Congress already decided that both of those crimes, as compared to the other violent crimes in Native American hearings, should be under 1959A1. So that's consistent with congressional intent. Your Honor, the government wouldn't disagree if the court sees it appropriate to read in some other sentence. But the government's argument is that this is the clearest, easiest, simplest way to read this statute, consistent with congressional intent and with the Supreme Court's guidance in Miller. So it would be comfortable if the panel decided that we've defined what Congress would want to do, and so we're going to write in a 25-year maximum sentence. Well, Your Honor, we would disagree with that, and we would argue that it's plainly contrary to congressional intent. But you would think that was in our roles as judges. Pardon me? But you would think that there wouldn't be a separation of powers problem with that. We could just go back there and figure out we think 25 years is right. Well, that sort of raises the Booker v. Evans question that the defendant has raised. This case is like Booker. It is not like Evans. The issue in Evans was interpreting a statute within its four corners, unaffected by judicial interference with a decision like Miller. But what the Supreme Court made very clear in Booker is that in an instance where a court has said that a portion of a statute is unconstitutional, courts must then determine whether that requires striking the entire statutory scheme or simply reading the statute differently. The Supreme Court has told us that that's what we must do. But that just means, again, I mean, this is just, that just means that, good news, subsections A, 2 through 6 are all fine, and probably the thing about kidnapping is fine, too. That's severability. You take out the part that's a problem, and everything that's not a problem is left. But once you take out the part that's a problem here, I mean, unless we can do what you're suggesting and just meld in the kidnapping, there's just nothing left to sentence a person. But if your order holds that way, if the court holds that way, as the district court did, then what the court is holding is that a juvenile defendant can't be prosecuted for these kinds of offenses, and that is so plainly contrary to correction. They can't be prosecuted as an adult until Congress amends the statute. Congress has to, I mean, I feel for Congress. I know it's really busy, but they just have to amend the statute. Well, certainly it would be nice if they did so, but I disagree that they have to, because what this court needs to do, what the Supreme Court has told this court it must do, is look at what Congress would have preferred. Would Congress prefer that juvenile defendants may not be prosecuted as adults for murder and aid of racketeering, or would Congress prefer that the courts read in the possibility of a sentence less than life? That's the question before the court. But even if Congress would prefer that judges do its job for it, they still can't. That's where I think you do run into this sort of Evans separation of powers problem. And yet courts have and did in Booker. In the severability analysis in Booker, when the court... Well, I agree with you. I think we sort of almost agree in principle that if this kidnapping thing works, if we can pull out the language between murder and kidnapping so that we are not creating the sentence, we're just picking up the sentence that's already in there, that's Booker severability. If that works, if that's plausible, then I agree it's not a separation of powers problem. But I'm concerned that that doesn't really work, that that's not severability. We perhaps partially agree in principle, Your Honor. I mean, certainly if we just delete 13 words or fail to read them when looking at it for a juvenile defendant, and the statute very smoothly reads to provide for that same sentencing scheme that it does for kidnapping. But again, I cite the court, the language in Booker, which is that the court can infer that the missing question, in Booker it's the standards of review, here it's the sentence, from related statutory language, the structure of the statute, and the sound administration of justice. All of those point to allowing the courts to continue to sentence life if they wish, if they find that it is in the sound administration of justice, but also to look at the mitigating factors of use as required by Miller, and have the possibility of imposing a term of life sentence. And the plainest way to read the statute, then, is for the court to be able to sentence the juvenile defendant any term of years up to and including life. Well, sometimes the Supreme Court seems, to some of us, to tell us very specifically things we cannot do, but because it's the Supreme Court, it does as it pleases. Fair enough, Your Honor. Regardless of the result in this case, one or the other of you will either have a good time going to the Supreme Court or talking to Congress or both, and I want to compliment both counsel on very excellent briefs and arguments here. Ms. McDonald, I see you're court-appointed, and we express our appreciation to you for undertaking this task. So we'll ask the clerk to adjourn court for the day, and we'll come down and greet counsel. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: G. Steven Agee, Pamela A. Harris, Theodore D. Chuang